**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**DAVIS E. McCLENDON,**

   **Petitioner,**

**vs.**

            **CASE NO. 4:09cv8-SPM/WCS**

**WALTER McNEIL,**

   **Respondent.**

_____/

**REPORT AND RECOMMENDATION**

   This is a petition for writ of habeas corpus filed by Davis E. McClendon pursuant to 28 U.S.C. § 2254. Doc. 1. Petitioner also filed a memorandum. Doc. 2. Petitioner challenges his conviction for attempted first degree murder in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number 2003CF1797A. *Id*. Petitioner was sentenced to a term of 20 years in prison to be followed by two years on community control and then eight years on probation. *Id*. Respondent filed an answer and the record in paper form. Doc. 18. References herein to exhibits are to the record in paper form. *See* doc. 18, pp. 31-32 (index to exhibits). Petitioner filed a traverse. Doc. 21. Respondent concedes that the petition was timely filed. Doc. 18, p.

4.  Respondent also concedes that Petitioner exhausted his state court remedies as to all claims presented in this petition.  *Id.*, p. 6.

**Evidence at trial**

Three months prior to the stabbing that resulted in Petitioner's conviction, Petitioner was involved in a violent altercation with his girlfriend, Darlene Britt.  Ex. D, p. 4 (brief on direct appeal).[1]  As a part of his release on that charge, Petitioner was to have no contact with Ms. Britt and was required to wear a GPS monitor.  *Id.*

On the morning of May 22, 2003, Ms. Britt went to Petitioner's workplace to get child support money for their child.  *Id.*  Petitioner said he needed to go to the store and got into Ms. Britt's car.  *Id.*, p. 5.  Ms. Britt started to drive away with Petitioner in the car, he pulled out a knife and threatened to kill her.  *Id.*  A struggle ensued and Ms. Britt was cut across the forehead and neck.  *Id.*  Ms. Britt testified she then exited the vehicle and Petitioner grabbed her clothing, wrestled her to the ground, pulled her into some bushes, and choked her.  *Id.*  Petitioner was heard by co-workers to say that he was going to kill her, and that "I done killed her."  *Id.*  Other witnesses heard Petitioner say that he killed Ms. Britt.  *Id.*, p. 6.  Ms. Britt testified at trial that Petitioner said "[d]ie, bitch, die," when he had his hands on her neck.  Ex. C (trial transcript), p. 116.  She said she suffered one slash to her neck, one slash to her chest, four slashes on her side, and another three slashes to her neck.  *Id.*, p. 137.  She testified that it took 22 staples to close up the wound to her back.  *Id.*, p. 119.

---

[1] The brief was filed pursuant to <u>Anders v. California</u>, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).  Ex. D, p. 1.

**Section 2254 Standard of Review**

For a claim which was fairly presented and adjudicated on the merits by the state court, the state court's factual determinations are presumed correct unless the Petitioner rebuts the presumption by clear and convincing evidence. § 2254(e)(1); Fugate v. Head, 261 F.3d 1206, 1215 and n. 11 (11th Cir. 2001) (citation omitted). Section 2254(e)(2) provides that:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
>   (A) the claim relies on –
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable;  or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence;  and
>
>   (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

As to legal issues, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S.Ct. 2113, 2119-20, 147 L.Ed.2d 125 (2000).

"[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. <u>Hawkins v. Alabama</u>, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also*, <u>Carey v. Musladin</u>, 549 U.S. 70, 74-77, 127 S.Ct. 649, 653-654, 166 L.Ed.2d 482 (2006) (§ 2254 refers to holdings, rather than *dicta*, of the Supreme Court, collecting cases to show that, "[r]eflecting the lack of guidance from this Court, lower courts have diverged widely in their treatment of defendants' claims").

> The "contrary to" clause in § 2254(d)(1) "suggests that the state court's decision must be substantially different" from the relevant Supreme Court precedent. Although a state court's decision that "applies a rule that contradicts the governing Supreme Court law is "contrary," a state court decision that applied "the correct legal rule" based on Supreme Court law to the facts of the petitioner's case would not fit within the "contrary to" clause even if the federal court might have reached a different result relying on the same law. In evaluating the "'unreasonable application' inquiry," the federal court should consider whether the state court's application of the law was "objectively unreasonable" and should not apply the subjective "'all reasonable jurists'" standard. The Supreme Court clarified that, under 28 U.S.C. § 2254(d)(1), the federal court may not

issue the writ unless it finds that the state court applied Supreme Court
law unreasonably.

Fugate, 261 F.3d at 1216 (summarizing the conclusions in Williams, citations omitted).

Of course, if the state court fails to address the merits of the federal claim, such

deference is not required. Bellizia v. Florida Dept. of Corrections, 614 F.3d 1326, 1328

n. 1 (11th Cir. 2010).

For an ineffectiveness of counsel claim, the "clearly established" standard is set

forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Under Strickland, "[a] convicted defendant making a claim of ineffective assistance of

counsel must identify the acts or omissions of counsel that are alleged not to have been

the result of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. In

determining whether counsel gave adequate assistance, "counsel is strongly presumed

to have rendered adequate assistance and made all significant decisions in the exercise

of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. Petitioner

has a heavy burden, as he must show that "no competent counsel would have taken the

action that his counsel did take." Fugate, 261 F.3d at 1217 (citation omitted). There are

no rigid requirements or absolute duty to investigate a particular line of defense, and

"more is not always better." Id. (citations omitted).

Even if Petitioner can show deficient performance, he must also show "a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068.

While <u>Strickland</u> explained the performance and prejudice prongs of analysis, the court need not address them in that order or even address both, as failure to demonstrate either step of <u>Strickland</u> is dispositive of the claim against the petitioner. 466 U.S. at 697, 104 S.Ct. at 2069.

**Ground one**

Petitioner contends that his trial counsel was ineffective for failing to move to dismiss the charge of attempted first degree murder. Doc. 1, p. 4 (p. 6 on ECF, the electronic case filing docket). He contends that a motion to dismiss would have been granted because the information did not allege that Petitioner committed that offense. *Id.* and p. 4a (pp. 6-7 on ECF).

Petitioner is correct that his name was omitted from the allegations in count I, the charge of attempted first degree murder. Ex. B, R. 1. Petitioner, however, is named in the style of the information. *Id.* Then, the prefatory sentence before the specific counts stated: "WILLIAM N MEGGS State Attorney for the Second Judicial Circuit of the State of Florida, charges that in Leon County, Florida, *the above named defendant(s).*" (Emphasis added.) That reference identifies Petitioner as the perpetrator of both count I and count II. Petitioner is also identified by name in count II, alleging violation of a condition of pretrial release in a domestic violence case, by having contact with Ms. Britt on May 22, 2003. *Id.* Thus, the state court denied this claim as presented in Petitioner's Rule 3.850 motion, finding that the information "sufficiently identifies the Defendant as the perpetrator." Ex. L, R. 76. The court also denied the claim because, pursuant to FLA. R. CRIM. P. 3.140(o), "the defect does not render the information

insufficient . . . because it is not misleading or does not expose the Defendant to embarrassment or double jeopardy." *Id.*

The trial court's determination that this information did not mislead is a ruling on state law that is binding on this court. <u>Herring v. Secretary, Dept. of Corrections</u>, 397 F.3d 1338, 1355 (11th Cir.), *cert. denied*, 546 U.S. 928 (2005). Thus, the information would not have been dismissed. FLA. R. CRIM. P. 3.140(o).

The information was not misleading because it clearly referred to Petitioner as the perpetrator of the offenses in both counts. Further, if this was a defect, it was only a formal defect. The information could have been amended in response to a motion to dismiss. FLA. R. CRIM. P. 3.140(j). It is not attorney error to fail to file a motion that has no legal basis.[2] Petitioner has not shown that the trial court's rejection of this claim of ineffectiveness has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground two**

Petitioner alleges that his trial counsel was ineffective for failing to move to suppress evidence. Doc. 1, p. 4 (p. 6 on ECF). Petitioner contends that evidence that he committed another act of violence against Ms. Britt should have been suppressed. *Id.*, p. 4b (p. 8 on ECF). Petitioner argues that there should have been no evidence at

---

[2] Nor was there an independent federal claim relating to the sufficiency of the information. "The sufficiency of a state indictment or information is not properly the subject of federal habeas corpus relief unless the indictment or information is so deficient that the convicting court is deprived of jurisdiction." <u>DeBenedictis v. Wainwright</u>, 674 F.2d 841, 842-843 (11th Cir. 1982) (citations omitted); <u>Heath v. Jones</u>, 863 F.2d 815, 821 (11th Cir. 1989) (following *DeBenedictis*).

trial about the earlier act of violence (which caused him to be on pretrial release and ordered to have not contact with Ms. Britt) because the court had severed count II, to be tried separately. *Id.*, p. 4d (p. 10 on ECF). Petitioner also contends that the admission of this evidence deprived him of due process. *Id.*, p. 4e (p. 11 on ECF).

The law governing an ineffective assistance of counsel claim is set forth above. The due process claim is different. An error of state law in the admission or exclusion of evidence is not, standing alone, a violation of due process. Thigpen v. Thigpen, 926 F.2d 1003, 1011 (11th Cir. 1991). "[I]f a state trial judge erroneously admitted evidence in violation of a state law and the error made the petitioner's trial so fundamentally unfair that the conviction was obtained in violation of the due process clause of the fourteenth amendment," a due process violation occurs. *Id.*, 926 F.2d at 1012. The court explained that "[a]n erroneous evidentiary ruling creates such fundamental unfairness when the wrongfully admitted evidence is 'material in the sense of a crucial, critical, highly significant factor.' " *Id. See also* Snowden v. Singletary, 135 F.3d 732, 737 (11th Cir.), *cert. denied*, 525 U.S. 963 (1998).

At the beginning of trial, counsel for both sides announced that an agreement had been reached as to what the jury would be told about the prior charge of assault, and this apparently resolved the motion to suppress without a hearing. Ex. C, p. 4. There was to be an acknowledgment that Petitioner had been charged with aggravated assault with a deadly weapon. *Id.* Apparently there was some mention of this pending charge "on the tape" by Petitioner. *Id.*, p. 5. Presumably this was an audiotape of Petitioner's statements to law enforcement officers. The court said that when this information came into evidence, there would be a limiting instruction. *Id.*, p. 6.

In opening statement, the prosecutor said that in February, 2003, Petitioner was charged with an aggravated assault with a deadly weapon involving his girlfriend and the mother of his child, Darlene Britt. Ex. C, p. 30. The prosecutor said that the evidence would show that Petitioner was on a GPS monitor with an ankle bracelet. *Id.* The prosecutor said that there would be evidence that there was not to be any contact between Petitioner and Ms. Britt. *Id.*, p. 31. The prosecutor said that despite this prohibition, there was consensual contact between Petitioner and Ms. Britt. *Id.* The prosecutor then said that there would be evidence that "an aggravated assault . . . had occurred back in February." *Id.* It was argued that Petitioner "was upset because of his pending charge and he was upset because he believed that Ms Britt had been out with someone else . . . ." *Id.*, p. 36.

During trial, Ms. Britt was asked whether Petitioner had been charged with an aggravated assault with a deadly weapon against her in February, 2003, and she said yes. *Id.*, p. 98. The court then instructed the jury that this evidence was to be considered "for the limited purpose of proving motive, opportunity, intent, preparation, plan, knowledge, the absence of mistake or accident on the part of" Petitioner. *Id.* Ms. Britt then testified that she knew that Petitioner had been ordered to wear a GPS monitor and to have no contact with her. *Id.*, p. 99. She said she was issued a pager, and if Petitioner came into areas designated as off-limits to Petitioner (where she often was), the pager would sound an alarm. *Id.* She admitted that despite the court order, she and Petitioner had had consensual contact. *Id.*, p. 101.

Officer Garrett, a Tallahassee Police Department investigator, identified the GPS monitor assigned to Petitioner, which was returned to the station by someone after it had been cut off Petitioner on May 22, 2003. *Id.*, R. 193.

During closing arguments, the prosecutor repeated her comments from her opening statement. She mentioned the February, 2003, charge. *Id.*, pp. 334-335. The prosecutor noted the evidence that Petitioner took off his GPS monitor and left it at the scene of the assault. *Id.*, 340. She argued that he took off the monitor and walked away, knowing he was being tracked with the monitor. *Id.*, p. 340.

The Rule 3.850 court denied this claim, noting that Petitioner's attorney did move to suppress this *Williams* rule[3] evidence. Ex. L, R. 76. The court further found that Petitioner had not shown deficient performance with respect to litigation of that motion. *Id.* The motion is Exhibit B to the court's order. Ex. L, R. 82-83 (Ex. B, pp. 17-18).

The trial court's finding that Petitioner failed to show what his attorney could have done to exclude this evidence is supported by the record. Petitioner did not cite to any cases in his argument in his Rule 3.850 motion. Ex. L, R. 7-14. He simply argued that the evidence was prejudicial and unrelated to the offense for which he was on trial. *Id.*

---

[3] <u>Williams v. State</u>, 110 So.2d 654 (Fla.1959).

Under the *Williams* rule evidence of other crimes, wrongs and acts is admissible if it is relevant to and probative of a material issue even though the evidence may indicate the accused has committed other uncharged crimes or may otherwise reflect adversely upon the accused's character. Section 90.404(2)(a), Florida Statutes, (1983), codifies the ruling in *Williams v. State* and lists the purposes for which such evidence is deemed to be admissible: proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

<u>Buenoano v. State</u>, 527 So.2d 194, 197 (Fla. 1988), *cert. denied*, 523 U.S. 1043 (1998).

Premeditation was an element of the offense charged, attempted first degree murder.  Ex. C, p. 308 (jury instructions).  The jury was instructed that the state had to prove that Petitioner had a "conscious decision to kill" "present in the mind at the time the act was committed."  *Id.*  Evidence of a similar crime against the same victim on another occasion is permitted under the *Williams* rule, as codified in FLA. STAT. § 90.404(2), to show motive and intent, essential aspects of premeditation.  Durousseau v. State, 2010 WL 4977477. *3 (Fla. Dec 9, 2010) (No. SC08-68).  The Florida Supreme Court cited examples:

> *See, e.g., Conde v. State*, 860 So. 2d 930, 945 (Fla. 2003) (upholding admission of Williams rule evidence where defendant was on trial for strangulation of a prostitute and the State introduced evidence of five other murders as relevant to identity, intent, and premeditation); *Bradley v. State*, 787 So.2d 732, 741-42 (Fla. 2001) (affirming admission of collateral crime evidence that was relevant to prove intent and premeditation) . . . .

2010 WL 4977477. *3.  The prior offense was similar in that it was the same victim and was an assault with a deadly weapon.

Petitioner has not shown that admission of this evidence, as limited by his attorney's efforts, was an error of state law, nor has he shown how his attorney could have done something differently to keep the evidence entirely from the jury.

The due process claim is likewise without merit.  There was no evidence of the specific circumstances of the earlier assault.  The evidence was needed to explain why Petitioner had a GPS ankle bracelet, and what it meant that he removed it after the assault on Ms. Britt.  Further, evidence that Petitioner had assaulted Ms. Britt with a deadly weapon just a few months earlier was evidence that he intended to kill her in the instant offense.  Premeditation was an essential element.  The court gave a limiting

instruction. Under these circumstances, the trial was not rendered fundamentally unfair. For all of these reasons, ground two affords no relief.

**Ground three**

Petitioner contends that his attorney was ineffective for failing to object to jury instructions concerning use of a dangerous weapon. Doc. 1, p. 5a (p. 13 on ECF). He argues that use of a dangerous weapon was not alleged in the information, and that asking the jury to make a finding as to use of a dangerous weapon was an improper constructive amendment of the information in violation of <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000). *Id.* Again, he also contends that this deprived him of due process. *Id.*

The Rule 3.850 court noted that trial counsel was diligent and thorough in his exploration of these issues at the charge conference. Ex. L, R. 76. Further, the court determined that Petitioner's reliance upon <u>Apprendi</u> was misplaced, because <u>Apprendi</u> only held that: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. at 2362-63. *Id.*, R. 77. The court reasoned that attempted first degree murder carried a maximum sentence of 30 years, the State did not seek an enhanced penalty, and Petitioner was sentenced to 20 years, below the maximum. *Id.* Thus, said the court, <u>Apprendi</u> did not apply. *Id.*

The information did not allege that Petitioner used a deadly weapon in the commission of attempted first degree murder. Ex. B, R. 1. It alleged that the crime was

committed by stabbing the victim or choking her. *Id.* The relevant enhancement statute, FLA. STAT. § 775.082(3)(a)3, was not mentioned either. *Id.*

An attempted first degree murder is punishable in Florida as a first degree felony carrying a maximum sentence of 30 years in prison. FLA. STAT. §§ 782.04(1)(a)1 (premeditated murder is a capital felony), 777.04(4)(b) (attempted capital felony is a first degree felony), and 775.082(3)(b) (30 year penalty for a first degree felony). Section 775.087(1)(a) provides that except where the use of a weapon or a firearm is an essential element, if the offender "carries, displays, uses, threatens to use, or attempts to use any weapon or firearm, or during the commission of such felony the defendant commits an aggravated battery," a first degree felony becomes a life felony. A life felony committed after July 1, 1995, is punishable by a maximum of life in prison, but with no minimum mandatory term. FLA. STAT. § 775.082(3)(a)3.

At sentencing, the prosecution did not pursue enhanced sentencing for use of a deadly weapon. Ex. V, R. 47-48 (seeking the maximum sentence, a 30 year sentence). The sentencing score sheet stated that the maximum penalty facing Petitioner was a 30 year prison term. Ex. B, R. 86. The scoresheet said that the degree of the offense was "F-1," a first degree felony, not a life felony. So does the judgment. *Id.*, R. 89. There is nothing on the sentencing scoresheet indicating enhanced sentencing to a life felony for use of a deadly weapon. *Id.*, R. 85-88. Thus, the finding by the trial court that a sentencing enhancement was not applied to Petitioner is fully supported by the record.[4]

---

[4] Further, the state court's ruling that Petitioner's attorney competently argued this issue is fully supported by the record. During the charge conference, the prosecutor said that the State was seeking an enhanced sentenced and asked for a finding by the jury on the verdict form that Petitioner used a deadly weapon. Ex. C (trial

Apprendi has no application when the penalty imposed does not exceed the statutory

maximum penalty prescribed for the crime. United States v. Clay, 376 F.3d 1296, 1301

(11th Cir. 2004), *cert. denied*, 543 U.S. 1192 (2005), *quoting*, United States v. Sanchez,

269 F.3d 1250, 1268 (11th Cir. 2001) (*en banc*). Accordingly, this court defers to the

ruling by the state court as to both the ineffectiveness claim and the *Apprendi* claim.

Petitioner has not shown that that ruling has "resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground four**

This is a variation of ground three. Petitioner contends that his attorney was

ineffective for failing to object at trial to the introduction of evidence that Petitioner used

a deadly weapon in the commission of the crime. Doc. 1, pp. 5 and 5b. The Rule 3.850

court denied the claim for the same reasons that ground three was denied, finding that

the claim had no merit because Petitioner did not receive an enhanced sentence. Ex. L,

---

transcript), p. 232. The trial judge said he was positive that the State had to allege use
of a deadly weapon in the information to be able to seek an enhanced sentence. *Id.*, R.
233. Petitioner's attorney said that in addition, the information had to refer to the
enhancement statute. *Id.* The court told the prosecutor that it did not have a problem
with the evidence that a deadly weapon was used; the problem was that the information
did not allege use of a deadly weapon. *Id.*, R. 239. The court said that *Apprendi*
required an allegation in the charging document and a specific finding by the jury. *Id.*
Strangely, the prosecutor was apparently unfamiliar with *Apprendi* as she said she
would read the case. *Id.* Later, the court again said that the use of a deadly weapon
had to be specifically alleged in the information. *Id.*, pp. 261-262. The prosecutor
argued that the verdict form needed a special interrogatory so that the State could
appeal an adverse ruling by the court. *Id.*, pp. 287-295. Petitioner's attorney objected.
*Id.*, pp. 296-302. The court relented, adding use of a weapon to the verdict form but
postponing whether this would permit enhanced sentencing until the time of sentencing.
*Id.*, pp. 298, 302-303. See also Ex. B, p. 83 (verdict).

R. 77.  The state court did not mention the evidentiary question (exclusion of the central

evidence at trial), so arguably there is no state decision as to which this court must

defer, but that is of no importance because this claim is nonsense.  Petitioner was

charged with attempting to murder Ms. Britt with premeditation by stabbing her or

choking her or both.  Ex. B, p. 1.  Evidence that Petitioner stabbed Ms. Britt with

anything capable of stabbing, including the knife that was actually used, was fair game.

Petitioner is not entitled to relief on this claim.

**Ground five**

Petitioner contends that the verdict was legally insufficient because the jury did

not specifically find that Petitioner had acted with premeditation or that Petitioner

stabbed or choked Ms. Britt.  Doc. 1, p. 6 (p. 17 on ECF).  Petitioner contends his

attorney was ineffective for failing to move to set aside the verdict.  *Id.*

The trial court denied this claim, finding that the jury was adequately instructed

as to the elements of attempted first degree murder.  Ex. L, R. 78.  The court found that

a special verdict would have been "redundant."  *Id.*  The court also determined that

"stabbing and/or choking" as alleged in the information were not elements of the

offense.  *Id.*

Petitioner's claim is without merit.  "A general verdict of guilt of first-degree

murder arising from an alternative theory of premeditation or felony murder is valid

where there is evidentiary support for one theory and the alternative theory is not legally

inadequate."  Steverson v. State, 787 So.2d 165, 167-168 (Fla. 2d DCA 2001).  "First

degree murder is such a crime and the jury may convict with a general verdict without

disclosing whether it found premeditation or felony murder." <u>State v. Reardon</u>, 763 So.2d 418, 421 (Fla. 5th DCA 2000). Thus, it is even clearer that a general verdict for premeditated murder, or an attempt, is permissible under Florida law in a case like the one here, where there was not even the problem of a separate valid theory for conviction. Petitioner has not shown that the state court's ruling has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground six**

Petitioner contends his attorney was ineffective during sentencing for failing to object to the 40 point score for severe victim injury. Doc. 1, p. 7 (p. 18 on ECF). Petitioner argues that Ms. Britt's hospital records indicated that her injuries were moderate. *Id.* Again, he asserts a denial of due process as well. *Id.*, pp. 8-9 (pp. 19-20 on ECF). Petitioner attached a hospital report to his petition. Doc. 1, Ex. C (doc. 102, pp. 10-14. This document reports that the victim was choked until she became unconscious. *Id.* (doc. 1-2, p. 12 on ECF). There was an 18 centimeter incision on the victim's upper back "just through the epidermis." *Id.*, p. 13. There were "mult" "lacs" (multiple lacerations) to the interior neck and upper chest. *Id.* It appears, though it is not clear, that the discharge diagnosis was moderate facial, cervical, and thoracic lacerations. *Id.*, p. 13.

The Rule 3.850 court originally denied this claim by finding no prejudice, that the same 20 year sentence might have been imposed even if the court had found the injuries to be moderate rather than severe. Ex. L, R. 79. The appellate court reversed

and remanded.  Ex. O.  The court reasoned that there was nothing in the record to show

that the trial court *would* have imposed the same sentence even if the scoresheet had

not reflected serious injury.  *Id.*, p. 2.  The claim was remanded for the trial court either

to hold an evidentiary hearing or to attach portions of the record that "conclusively"

refute the claim.  *Id.*, p. 3.

On remand, the state court again denied Petitioner's claim.  Ex. Q, R. 142-145.

The court noted that under Florida law, an injury is "severe" where there was scarring

requiring 26 stitches.  *Id.*, R. 144, citing <u>Cardwell v. State</u>, 525 So. 2d 1025 (Fla. 5th

DCA 1988).  The court then noted that there was evidence in this case that Petitioner

choked the victim and stabbed her multiple times.  *Id.*  The victim appeared at

sentencing and testified that she missed seven days of work, and had not regained

feeling on the left side of her head.  *Id.*, n. 2.  The court noted that there were

photographs at trial showing "slashes," and Ms. Britt required 22 staples to close her

back wound.  *Id.*  The court determined that these injuries exceeded in severity the

injuries found in <u>Cardwell</u> to have been "severe."  *Id.*  The court concluded that the

scoresheet was not wrong, and thus ineffective assistance of counsel had not been

shown.  *Id.*

All of the state court's findings are supported by evidence in the record, both at

trial and sentencing.  Petitioner has not shown that the denial of this claim has "resulted

in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States." §

2254(d)(1).

**Certificate of Appealability**

Case No. 4:09cv8-SPM/WCS

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2254 Rule 11(b).

I find no substantial showing of the denial of a constitutional right. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, I recommend that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party should bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

**Conclusion**

Accordingly, it is **RECOMMENDED** that the 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Davis E. McClendon challenging his conviction for attempted first degree in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number 2003CF1797A, be **DENIED WITH PREJUDICE**, and that a certificate of appealability be **DENIED** pursuant to § 2254 Rule 11(a).

**IN CHAMBERS** at Tallahassee, Florida, on December 29, 2010.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.
UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**